*In re* ERNESTO RODRÍGUEZ APONTE, Respondent.

No. 92. Argued April 8, 1957.—Decided April 17, 1957.

*Francisco Coll Moya* for respondent. *Noel Colón Martínez, Special Fiscal,* and *César Bobonis Díaz, Assistant Fiscal,* for The People.

PER CURIAM.

Under instructions of this Court the *Fiscal* filed a disbarment proceeding against Ernesto Rodríguez Aponte. On May 14, 1956, Judge Carlos Santana Becerra was appointed by the Court to act as Master in this case. The charges against respondent are the following:

"FIRST CHARGE

"That on or about the month of October 1954 and in San Juan, Puerto Rico, the aforesaid attorney and notary, ERNESTO RODRÍGUEZ APONTE, knowingly, maliciously and fraudulently forged and altered a paper, document or instrument of the kind known as *Order of Release*—which was already signed by the

Hon. Judge Gayetano Coll Pujols—by erasing the name of the defendant, the date of issuance of the document, and the name of the offense, and writing instead the name of another defendant: Nicolás Cádiz Benítez; another date: October 18, 1954, and another offense: Petit Larceny; all of which was done with the fraudulent and illegal purpose of presenting, as he did present to the Warden of the Municipal Jail of San Juan, the aforesaid order of release as a genuine and real order, and of obtaining, as the aforesaid attorney and notary ERNESTO RODRÍGUEZ APONTE did obtain, the unlawful release of Nicolás Cádiz Benítez who was at the time imprisoned in the Municipal Jail of San Juan.

### "SECOND CHARGE

"That on or about the month of November 1954 and in San Juan, Puerto Rico, the aforesaid attorney and notary ERNESTO RODRÍGUEZ APONTE, knowingly, maliciously and fraudulently forged and altered a paper, document or instrument of the kind known as *Order of Release*—which was already signed by the Hon. Judge Cayetano Coll Pujols—by erasing the name of the defendant, the date of issuance of the document, and the name of the offense, and writing instead the name of another defendant: Santos Torres; another date: November 9, 1954, and other offenses: Carrying Weapons and Disturbing the Peace; all of which was done with the fraudulent and illegal purpose of presenting, as he did present to the Warden of the Municipal Jail of San Juan, the aforesaid order of release as a genuine and real order, and of obtaining, as the aforesaid attorney and notary ERNESTO RODRÍGUEZ APONTE did obtain, the unlawful release of Santos Torres who was at the time imprisoned in the Municipal Jail of San Juan.

### "THIRD CHARGE

"That on or about the month of November 1954 and in San Juan, Puerto Rico, the aforesaid attorney and notary ERNESTO RODRÍGUEZ APONTE, knowingly, maliciously and fraudulently forged and altered a paper, document or instrument of the kind known as *Order of Release*—which was already signed by the Hon. Cayetano Coll Pujols—by erasing the name of the defendant, the date of issuance of the document, and the name of the offense, and writing instead the name of another defendant: Antonio Avilés Santiago: another date: November 9, 1954,

and another offense: Indecent Exposure; all of which was done with the fraudulent and illegal purpose of presenting, as he did present to the Warden of the Municipal Jail of San Juan, the aforesaid order of release as a genuine and real order, and of obtaining, as the aforesaid attorney and notary ERNESTO RODRÍGUEZ APONTE did obtain, the unlawful release of Antonio Avilés Santiago who was at the time imprisoned in the Municipal Jail of San Juan.

### "FOURTH CHARGE

"That on or about the month of January 1955 and in San Juan, Puerto Rico, the aforesaid attorney and notary ERNESTO RODRÍGUEZ APONTE, knowingly, maliciously and fraudulently forged and altered a paper, document or instrument of the kind known as *Order of Release*—which was already signed by the Hon. Judge Cayetano Coll Pujols—by erasing the name of the defendant, the date of issuance of the document, and the name of the offense, and writing instead the name of another defendant: Inocencio Vélez Domingo; another date: January 1, 1955, and other offenses: Aggravated Assault and Battery and Disturbing the Peace; all of which was done with the fraudulent and illegal purpose of presenting, as he did present to the Warden of the Municipal Jail of San Juan, the aforesaid order of release as a genuine and real order, and of obtaining, as the aforesaid attorney and notary ERNESTO RODRÍGUEZ APONTE did obtain, the unlawful release of Inocencio Vélez Domingo who was at the time imprisoned in the Municipal Jail of San Juan.

### "FIFTH CHARGE

"That on or about the month of January 1955 and in San Juan, Puerto Rico, the aforesaid attorney and notary ERNESTO RODRÍGUEZ APONTE, knowingly, maliciously and fraudulently forged and altered a paper, document or instrument of the kind known as *Order of Release*—which was already signed by the Hon. Judge Cayetano Coll Pujols—by erasing the name of the defendant, the date of issuance of the document, and the name of the offense, and writing instead the name of another defendant: Ramón L. Brenes Mentries; another date: January 1, 1955, and another offense: Violation of § 17-A of Act No. 279; all of which was done with the fraudulent and illegal purpose of presenting, as he did present to the Warden of the

Municipal Jail of San Juan, the aforesaid order of release as a genuine and real order, and of obtaining, as the aforesaid attorney and notary ERNESTO RODRÍGUEZ APONTE did obtain, the unlawful release of Ramón L. Brenes Mentries who was at the time imprisoned in the Municipal Jail of San Juan."

After several hearings were held and oral and documentary evidence was introduced, the Master rendered his report to the Court making the following findings of fact:

### "CHARGE 1

"1(a) The order of release on which Nicolás Cádiz Benítez was set at liberty on bail on October 18, 1954, for the offense of Petit Larceny (Exh. 5) was an erased order which had been previously issued in favor of Pedro Ortiz on October 17, 1954, for a violation of § 7-A of the Automobile Act. The respondent wrote the name of Nicolás Cádiz Benítez and the offense, Petit Larceny.

"(b) The order of release used to discharge Pedro Ortiz on bail (Exh. 11) on October 17, 1954, for a violation of § 7-A of Act No. 279 was an erased order which had been previously issued in favor of Pablo Hernández on October 17, 1954, for a violation of a municipal ordinance. The respondent wrote the order of release of Pedro Ortiz.

"(c) The order of release on which Pablo Hernández was set free (Exh. 18) on October 17, 1954, for a violation of a municipal ordinance, was an order which had been previously erased or deleted. The defendant wrote the name of Pablo Hernández and the offense, violation of municipal ordinance. The rest was written by Angel Luis Alonso, an employee of the respondent.

### "CHARGE 2

"2(a) The order of release under which Santos Torres was bailed on November 9, 1954, after being charged with Carrying Weapons and Disturbing the Peace (Exh. 1) was an erased order which had been previously issued in favor of Emiliano Orellana, on November 5, 1954, charged with Aggravated Assault and Battery. The respondent wrote the name of Santos Torres, the nature of the offense, and also where it says Santos Torres furnished bond. Luis Alonso, his employee, wrote out the rest.

"(b) The order of release used to set Emiliano Orellana at liberty temporarily on November 5, 1954, for Assault and Battery and Disturbing the Peace (Exh. 10) was an erased order which had been previously issued in favor of Ángel Rivera, on November 4, 1954. The respondent wrote the name of the defendant Emiliano Orellana Morales, and the nature of the offense.

"(c) The order of release used to discharge Ángel Rivera on bail on November 4, 1954, for a violation of Act No. 279 (two cases) (Exh. 16) was an erased order which had been previously issued in favor of Luis Vargas Heruández for Carrying Weapons and Aggravated Assault and Battery on November 2, 1954. The respondent wrote the name of the defendant Ángel Luis Rivera Santiago, the offense, and "Ángel Luis Rivera furnished bond."

"(d) The order of release used to discharge Luis Vargas Hernández on November 2, 1954, for carrying weapons and aggravated assault and battery (Exh. 17) was an erased order, issued in favor of Esteban Vega on October 31, 1954, for disturbing the peace. Respondent did not write on this order, and part of it is written by his employee Luis Alonso.

"(e) The orders of release used to discharge Esteban Vega and Juan Pagán were also erased and Vega's had been previously issued in favor of Manuel Rodríguez, and Pagan's in favor of Guillermo Benvenutti.

"CHARGE 3

"3 (a) The order of release on which Antonio Avilés Santiago was bailed, on November 9, 1954, for indecent exposure (Exh. 3) was an erased order which had been previously issued in favor of Socorro Isaac on November 6, 1954, for assault and battery. The respondent wrote the order of release of Avilés Santiago, except where it says "Río Piedras" Section.

"(b) The order of release used to discharge Socorro Isaac on November 6, 1954, for assault and battery (Exh. 9) was an erased order previously issued in favor of Joaquín Lozada on November 4, 1954, for disturbing the peace. There is no evidence as to who wrote Isaac's order of release.

"(c) The order of release used to discharge Joaquín Lozada on November 4, 1954, for disturbing the peace and for violation of a municipal ordinance (Exh. 12) was an erased order previously issued in favor of Benancio Caraballo on November 3,

1954, for disturbing the peace. The name of the defendant, Joaquín Lozada Álvarez, seemed to the witness to have been written by the respondent, but she was not sure.

"(d) The order of release used to discharge Benancio Caraballo, on November 3, 1954, for disturbing the peace (Exh. 13) was an erased order previously issued in favor of Luciano Fuentes on November 1, 1954, for malicious mischief. The order in favor of Caraballo was written by the respondent, except where it reads "Río Piedras" Section.

"(e) The order of release used to discharge Luciano Fuentes on November 1, 1954, for malicious mischief (Exh. 14) was an erased order previously issued in favor of Enrique Viera on October 31, 1954, for disturbing the peace. In this order the respondent wrote the name of the defendant—Luciano Fuentes—the nature of the offense, and also 'furnished bond.'

"(f) An order of release issued jointly in favor of Hoodrow Santiago and four other codefendants on October 30, 1954, for disturbing the peace, was an order previously erased and washed off.

## "CHARGE 4

"4(a) The order of release on which Inocencio Vélez Domingo was discharged on January 1, 1955, for carrying weapons, aggravated assault and battery and disturbing the peace (Exh. 2) was an erased order previously issued in favor of Bonifacio Marrero on November 11, 1954, for a violation of a municipal ordinance. The respondent wrote out Vélez Domingo's order in full.

"(b) The order of release used to discharge Bonifacio Marrero on November 11, 1954, for a violation of a municipal ordinance (Exh. 7) was an erased order previously washed off. The respondent wrote in this order the name of Bonifacio Marrero, the nature of the offense, and also 'Mpl-Capital' and then again 'Bonifacio Marrero.'

## "CHARGE 5

"5(a) The order of release used to discharge Ramón L. Brenes Mentries on bail, on January 1, 1955, for a violation of § 17-A of Act No. 279 (Exh. 4) was an erased order previously issued in favor of Marcial González Figueroa on December 23, 1954, for violation of a municipal ordinance, disturbing the peace and carrying weapons. The order of release in favor of Mentries was entirely written out by the respondent.

"(b) The order of release used to discharge Marcial González Figueroa on December 23, 1954, for violation of a municipal ordinance, carrying weapons and disturbing the peace and for failure to register the weapons (Exh. 8) was an erased order previously blotted out. In this order the respondent wrote the name of the defendant, Marcial González Figueroa, the nature of the offenses, again 'Marcial González Figueroa furnished bond'. The rest was written by Alonso, his employee.

"6. There was no direct evidence in any of the charges specifically enumerated nor in the cases under paragraphs 1(a) and (b); 2(b), (c) (d), and (e); 3(b), (c), (d), (e), and (f); 4(b) and 5(b) as to whether or not at the time those orders of release were erased and rewritten on behalf of other defendants, the nature of the offenses and the dates changed, the orders were already signed (as charged) by the judge.

"7. All the orders of release involved herein were erased and deleted with ink eradicator, at his office and at his home, by respondent himself or his relatives and employees, and were rewritten wholly or partially by the respondent, or by his employees at the respondent's request. There are 319 orders of release which were erased.

"8. It was the practice of the respondent to prepare several orders of release—three or four—for a single defendant and then send them to the judge with different persons. Also, in the case of several codefendants jointly charged with the same offense, he obtained orders of release collectively and individually or separately. The extra orders which were not employed to discharge a prisoner were delivered by the employees to the respondent's wife who kept them until they could be used again. The orders of release used by a defendant did not and could not return to the hands of the respondent because they remained in the possession and under the custody of the jail's Warden.

"9. The respondent had in his possession a release order already signed by the judge and aparently in blank. When said order was photographed with ultra violets rays it revealed that the writing had been eradicated and it had previously contained the name of a defendant, an offense and a date. (*Exh. 81.*)

"10. The testimony of the experts established the existence of 12 orders of release [none of them corresponds to the charges specifically enumerated] where the deletion or erasure partly

altered the signature of Judge Coll Pujols. This and Exh. 81, added to the oral testimony to that effect, leads to the conclusion that the respondent erased orders already signed by the judge.

"11. It was respondent's practice to appear daily in the Municipal Jail at Stop 8 early in the morning on working days and on holidays. There he interviewed a number of persons under arrest, asked the Warden for the data and the offense charged in each case and in a rather short time—an average of an hour—there arrived a number of releases for the persons that the respondent interviewed, brought by his employees and even by relatives.

"12. The respondent charged money for the temporary release on bail, sometimes because he also assumed the defense of the case, and others for the release itself.

"13. As to whether the five orders of release object of the five charges specifically enumerated were already signed by the judge when they were altered, there is only circumstantial evidence. (2) (For the theory now applicable as to circumstantial evidence: *People* v. *Bonilla*, 78 P.R.R. 144). The other facts concerning the aforesaid specific charges were established by direct evidence."

The parties having been notified and served with a copy of the Master's report, they have filed separate briefs informing the Court that they have no objections to his findings of fact.

The findings of fact of the Master are amply supported by the evidence on record. The charges made against respondent and proved are extremely serious. Consequently, an order of disbarment will be entered removing him from the office of attorney and notary in Puerto Rico.

Mr. Justice Marrero did not participate herein.